IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JESSICA MCMUNN, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Civil Action No. 20-1572 ) ) |
| KILOLO KIJAKAZI,[1] *Acting Commissioner of Social Security*, | ) ) ) |
| Defendant. | ) |

ORDER

AND NOW, this 24th day of March 2022, the Court has considered the parties' motions for summary judgment and will grant Defendant's motion. The decision denying Plaintiff's application for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381 *et seq.*, is supported by substantial evidence and, accordingly, will be affirmed. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).[2]

---

[1]   Kilolo Kijakazi is hereby substituted as Defendant, replacing former Commissioner Andrew Saul pursuant to Federal Rule of Civil Procedure 25(d). This change does not impact the case. 42 U.S.C. § 405(g). The Clerk is directed to amend the docket appropriately.

[2]   On August 22, 2018, Plaintiff, who received SSI benefits as a child, protectively filed an application for SSI benefits as an adult after the Administrative Law Judge ("ALJ") redetermining her eligibility for benefits once she attained age eighteen found that her disability had ended on May 1, 2014, and that she had not "become disabled again" as of January 11, 2017. (R. 27, 109, 118). Plaintiff's 2018 application was denied by another ALJ on February 26, 2020. (R. 39). That decision became the final agency decision in the matter when the Appeals Council denied Plaintiff's request for review (R. 1). 20 C.F.R. § 416.1481. Plaintiff seeks review of that decision herein, though she has informed the Court that, as of October 1, 2020, she was found disabled pursuant to an application for SSI benefits she filed after she received the adverse decision of the Appeals Council. (Doc. No. 25, pg. 2 n.1). For purposes of this appeal, Plaintiff challenges the ALJ's decision that her mental impairments did not meet or equal the criteria for at least one of the presumptively disabling impairments that are listed in the regulations. She also contends that the ALJ only found work suitable to her residual functional capacity ("RFC") and vocational characteristics because he ignored various limitations that restricted her. As

explained herein, the Court is unpersuaded by Plaintiff's challenges to the ALJ's decision, therefore, the decision will be affirmed.

The standard of review applied to an ALJ's final decision for the agency is bifurcated: review of legal determinations is plenary, while findings of fact are reviewed for substantial evidence. *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). Substantial evidence is "more than a mere scintilla," also defined as, "such relevant evidence as a reasonable mind might accept as adequate." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) (citing *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). However, "[a] single piece of evidence will not satisfy the substantiality test if the [ALJ] ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (citation omitted). Reviewing courts will not find a decision is supported by substantial evidence if an ALJ fails to address evidence that contradicts his or her findings or rejects it for the "wrong reason." *Id.* at 1066 (citing *Cotter v. Harris*, 642 F.2d 700, 707 (3d Cir. 1981)).

ALJs decide whether a claimant is disabled under the Act by employing a five-step sequential evaluation articulated in the regulations at 20 C.F.R. § 416.920. In the first four steps, the claimant carries the burden of proof and the ALJ seeks to (1) ensure the claimant is not "doing substantial gainful activity," (2) find the claimant suffers from a medically determinable impairment that alone or combined with others is severe and meets the duration requirement, (3) determine whether the claimant's impairment(s) meet the requirements for one of the presumptively disabling impairments listed in the regulations, and (4) decide whether the claimant can return to past work despite limitations arising from his or her medically determinable impairments. *Id.* § 416.920(a)(4)(i)—(iv). The most a claimant can do despite her limitations is her RFC. *Fargnoli*, 247 F.3d at 40 (citing *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000)). If, at step four, the claimant proves that his or her RFC will not permit a return to past work, the burden shifts to the ALJ who must identify "other work," *i.e.*, occupations that correspond to "jobs that exist in significant numbers in the national economy," that the claimant could perform on a sustained basis with his or her RFC and vocational characteristics (age, education, and work experience). *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002). This "significant number" of jobs may exist in "one or more occupations." 20 C.F.R. § 416.966(b).

Plaintiff argues that the ALJ's decision at step three of the five-step evaluation is not supported by substantial evidence. As explained above, it is at this step that the ALJ determines whether the claimant's impairments meet or equal the criteria for any presumptively disabling impairment that is listed in the regulations. The listed impairments relevant to Plaintiff's case are found at 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04 ("Depressive, bipolar and related disorders"), 12.05 ("Intellectual disorder"), 12.06 ("Anxiety and obsessive-compulsive disorders"), and 12.15 ("Trauma- and stressor-related disorders"). Three of them—Listings 12.04, 12.06, and 12.15—have criteria that overlap significantly. All three have A-criteria, B-criteria, and C-criteria. *Id.* §§ 12.04, 12.06, and 12.15. To meet/equal one of these listings, claimants must show that they meet either the "A and B" criteria or the "A and C" criteria. *Id.* The A-criteria is a requirement that the claimant can provide "medical documentation" of a certain number of characteristics of the relevant disorder. *Id.* The B-criteria are satisfied by

showing the claimant suffers from one extreme or two marked limitations in the four "areas of mental functioning," which are: "[u]nderstand, remember, or apply information;" [i]nteract with others;" "[c]oncentrate, persist, or maintain pace;" and "[a]dapt or manage oneself." *Id.* The C-criteria are satisfied if the claimant can demonstrate that his or her disorder is "serious and persistent." *Id.* The C-criteria are not at issue in this case.

In this matter, the ALJ focused on whether Plaintiff had satisfied the B- or C-criteria for Listings 12.04, 12.06, and 12.15. For the B-criteria, the ALJ found Plaintiff had only moderate limitations in each area of mental functioning and therefore failed to prove the existence of one extreme or two marked limitations. (R. 30—31). Plaintiff contends that the evidence supported at least "marked limitation" in all four areas. (Doc. No. 22, pgs. 10, 17—18). To warrant remand on this issue, Plaintiff would have to prove that the ALJ's moderate-limitations findings were unsupported by substantial evidence, that is, that the ALJ arrived at those findings by ignoring countervailing evidence, rejecting relevant evidence for the wrong reason, or finding only moderate limitations despite overwhelming evidentiary support for a different finding. *Cotter*, 642 F.2d at 706 ("[I]t is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason[.]"); *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). The Court will not set aside adequately supported findings merely because there is evidence in the record that could "support[] a contrary conclusion." *Malloy v. Comm'r of Soc. Sec.*, 306 Fed. Appx. 761, 764 (3d Cir. 2009).

The Court here finds that the ALJ's moderate-limitations findings are supported by substantial evidence and Plaintiff has not persuasively argued that the ALJ overlooked relevant evidence, rejected relevant evidence for the wrong reason, or that evidence supporting a contrary conclusion was overwhelming. Plaintiff argues the evidence supported a marked limitation in understanding, remembering, and applying information because of indicia in the record that Plaintiff could not remember chores, Plaintiff's aunt's testimony that she doubted her earlier impression that Plaintiff's memory was selective, and Plaintiff's poor performance on a test of her working memory. (Doc. No. 22, pg. 17). However, the ALJ adequately supported the moderate limitation in this area, explaining that he considered Plaintiff's alleged difficulty with memory and objective indicia of "severe deficits in verbal skills, visual spatial skills, and working memory," alongside evidence that Plaintiff reported improved memory and concentration. (R. 30). For interacting with others, Plaintiff argues a marked limitation is supported by her difficulty forming peer relationships and her family's concern that "she might blow up and hit someone." (R. 493). However, the ALJ supported his finding of only a moderate interactional limitation by reference to Plaintiff's treatment notes wherein instances of irritability were countered by Plaintiff's pleasant manner with customers at a work rehabilitation program. (R. 30). For Plaintiff's ability to concentrate, persist, or maintain pace, Plaintiff argues that there should have been a finding of at least marked limitation because of her poor intellectual testing and difficulty in school, the latter demonstrated by notes in her Individualized Education Plan ("IEP") from Highlands Senior High School. (Doc. No. 22, pg. 18 (citing R. 324—45)). The Court, however, finds the ALJ adequately justified the moderate concentrate/persist/maintain pace limitation by reference to Plaintiff's ability to prepare meals, reported improvement in memory and concentration with medication, and her ability to, *inter alia*, "follow a task schedule" at her work rehabilitation program. (R. 31). The ALJ similarly

3

justified his finding of only moderate limitation in Plaintiff's ability to adapt or manage herself by balancing evidence of difficulties—*e.g.*, Plaintiff's self-asserted difficulty bathing and dressing—with her good grooming and reported stabilization of mood with medication. (*Id.*).

Although Plaintiff marshals the evidence of record to show that it could have supported more significant mental functioning limitations, there is no compelling argument to be made that the ALJ ignored relevant evidence or rejected relevant evidence without explanation in his articulation of moderate limitations. The ALJ thoroughly reviewed evidence from Plaintiff's treatment at Wesley Family Services, the Family Counseling Center of Armstrong County, and the cognitive evaluation offered by Dr. Lindsey Groves. The ALJ more limitedly considered Plaintiff's IEP from Highlands High School, however, the Court notes that the IEP reflected Plaintiff's abilities prior to the relevant period. Looking at the entirety of the decision, *Cosme v. Comm'r Soc. Sec.*, 845 Fed. Appx. 128, 132 (3d Cir. 2021), the ALJ also justified his findings by reference to the State agency psychological consultant Dr. Sharon Becker Tarter's findings. (R. 37). In the four areas of mental functioning, Dr. Becker Tarter found that Plaintiff was moderately limited in two respects but only mildly limited in understanding, remembering, or applying information, and in the ability to adapt and manage oneself. (*Id.* (citing R. 133)). The ALJ explained that he found Dr. Becker Tarter's opinion to be "somewhat persuasive," but articulated greater limitations in the two areas where she had found only mild limitations because Plaintiff's record "as a whole" supported more significant limitations. (*Id.*). The ALJ's thorough consideration of the evidence toward the B-criteria for Listings 12.04, 12.06, and 12.15 thus satisfies the Court.

The Court is similarly satisfied by the ALJ's articulation of why Plaintiff did not demonstrate the criteria for Listing 12.05, Intellectual disorder. Listing 12.05 provides two alternative criteria for the listing, A or B. Plaintiff could not meet the 12.05A criteria because her intellectual functioning was sufficient "to participate in standardized testing of intellectual functioning." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05A. To meet or equal the 12.05B criteria, claimants *must* satisfy three criteria. First, they must demonstrate a "[s]ignificantly subaverage general intellectual functioning," which Plaintiff was able to do because her full-scale IQ was in the appropriate range. *Id.* §12.05B(1)(a); (R. 30). Second, they must prove the same limitations of mental functioning that the Court addressed for Listings 12.04, 12.06, and 12.15, that is, they must demonstrate "extreme limitation of one, or marked limitation of two" of the four areas of mental functioning. *Id.* Third, claimants must demonstrate that their "disorder began prior to [their] attainment of age 22." *Id.* Because the ALJ found only moderate limitations for the B criteria at Listings 12.04, 12.06, and 12.15, he further found that Plaintiff could not prove that she met or equaled all the criteria for Listing 12.05B and added that Plaintiff had failed to prove onset prior to attaining twenty-two years of age. (R. 33).

Disputing the ALJ's finding for Listing 12.05B, Plaintiff argues that the ALJ effectively rejected her diagnosed intellectual disability. However, Plaintiff here appears to have conflated recognition of an intellectual disability diagnosis with finding that a claimant met all the criteria for the listed intellectual disorder at 12.05B. Plaintiff views the ALJ's finding for Listing 12.05B as a rejection of Plaintiff's IQ scores, that is, the ALJ effectively found that Plaintiff's IQ scores inaccurately reflected her intellectual functioning. That is problematic, argues Plaintiff, because

4

the Social Security Administration's ("SSA") *Hearings, Appeals, and Litigation Law Manual* ("HALLEX") dictates that an ALJ must obtain an expert medical opinion to interpret raw intellectual test scores. (Doc. No. 22, pgs. 11—12 (citing HALLEX, I-2-5-34(A)(1) (explaining that ALJs must obtain a medical expert's opinion if "[t]here is a question about the accuracy of medical test results reported, requiring evaluation of background medical test data."))).

Plaintiff's intelligence testing revealed a second percentile IQ (Full-Scale 70) with borderline verbal comprehension, extremely low perceptual reasoning, and extremely low working memory. (R. 596). That and other signs led Dr. Groves to include "Intellectual Disability, Mild" among the diagnoses arising from the December 2019 cognitive evaluation. (R. 597). Despite Dr. Groves's findings and diagnosis, the ALJ found that Plaintiff's medically established impairments—including "borderline intellectual functioning" (R. 29)—did not meet the criteria for the intellectual disorder listing at 12.05B because, as explained above, Plaintiff's mental functioning was only moderately impaired and, further, the evidence failed to demonstrate onset prior to age twenty-two. (R. 33). The ALJ's finding in this regard is not indicative of his alleged distrust for the examining/diagnosing psychologist's testing, nor of his disregard of the instruction at HALLEX I-2-5-34 that ALJs must get a medical expert opinion when there is a question as to the accuracy of medical testing, despite Plaintiff's argument to the contrary (Doc. No. 25, pg. 5). HALLEX does not "bind the [SSA]." *Chaluisan v. Comm'r Soc. Sec.*, 481 Fed. Appx. 788, 791 (3d Cir. 2012). And, more importantly, the ALJ did not question the accuracy of Plaintiff's intellectual testing results. Rather, the ALJ specifically accepted those results and did not dismiss the diagnosis arising therefrom. (R. 30, 33). The problem for Plaintiff is that diagnosis could not satisfy her burden of proof at step three because a mere diagnosis "does not reveal the degree of functional limitation resulting from the claimant's mental impairment." *Maddaloni v. Comm'r of Soc. Sec.*, 340 Fed. Appx. 800, 802 (3d Cir. 2009). It was therefore appropriate for the ALJ to look beyond Plaintiff's diagnosed intellectual disability to determine whether Plaintiff met all the criteria for Listing 12.05B. He did so, appropriately relying on his findings for the B-criteria relevant to Listings 12.04, 12.06, and 12.15. (R. 33). A medical expert's opinion was not necessary for the ALJ to determine, as he did here, that Plaintiff failed to prove the ultimate issue of disability at step three of the five-step evaluation. *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 362 (3d Cir. 2011).

The Court next addresses Plaintiff's secondary argument that even setting aside the alleged step-three errors, the ALJ's decision at step five—that Plaintiff could work full-time as a cleaner, laundry aid, or dishwasher (R. 38)—was not supported by substantial evidence. When he arrived at the fifth step of the evaluation, the ALJ in this matter considered Plaintiff's vocational characteristics (age, education, and work experience) and RFC to determine whether her abilities and characteristics would permit adjustment to one or more occupations. (*Id.*). At step four, the ALJ had found Plaintiff's RFC included the ability to do work at all exertional levels, but that she was limited to, *inter alia*, work that did not require "proximity to occupational hazards such as . . . dangerous machinery" and demanded "no more than simple, routine, repetitive tasks." (R. 33). The ALJ further limited Plaintiff to low stress work and work that required only "occasional superficial contact with coworkers," "occasional interaction with supervisors," and required "no contact with the public." (*Id.*). At the hearing, the vocational expert ("VE") testified how further limitations would affect Plaintiff's work prospects, however,

no additional limitations were included in the RFC.  Based on the VE's testimony, the ALJ determined that Plaintiff could work as a cleaner, laundry aid, or dishwasher.  (R. 38).  The VE further testified that jobs in the national economy in those occupations totaled 136,000, 42,000, and 275,000, respectively.  (*Id.*).  The VE confirmed her testimony's consistency with the Dictionary of Occupational Titles ("DOT"), and the ALJ thus accepted her testimony to support the conclusion that Plaintiff could successfully adjust to available work.  (R. 38—39).

Plaintiff argues that the ALJ ignored the VE's testimony that additional limitations would present barriers to employment.  Those additional proposed limitations included: requiring regular re-instruction and frequent observation/intervention; repeated outbursts of anger or withdrawal from the workplace because of normal interactions with a supervisor; off-task time in excess of 10% of the workday or more than one absence per month; inability to keep up with a production rate or pace of the job regularly; the inability to carry out simple instructions two-thirds of the time; and the inability to learn job responsibilities within thirty days.  (R. 89—91).  Critically, these limitations were merely alleged—posed by Plaintiff's counsel at the hearing—but not included in the ALJ's RFC finding.  The ALJ had no obligation to account for them in the RFC unless he found they were credible.  *Salles v. Comm'r of Soc. Sec.*, 229 Fed. Appx. 140, 147 (3d Cir. 2007) ("[T]he ALJ need only include in the RFC those limitations which he finds to be credible.").  To the extent the Court interprets Plaintiff's argument as a challenge to the RFC determination, the Court is unconvinced that the ALJ's RFC is unsupported by substantial evidence.  Plaintiff's argument in this regard is conclusory; in her reply brief, she referred the Court to her argument against the ALJ's listings determinations.  (Doc. No. 25, pg. 8).  Regardless, the Court finds that the ALJ thoroughly considered the evidence toward the RFC finding and it is supported by substantial evidence.  The ALJ considered Plaintiff's allegations (R. 34), treatment records for anxiety and depression (*id.*), mental status examination (R. 35), medication management records (R. 35—36), records from her participation in a psychiatric rehabilitation program (R. 36), the prior administrative medical finding evidence (R. 36—37), and Plaintiff's aunt's testimony (R. 37).  Though Plaintiff has offered how she would have the Court interpret the evidence of record in her challenge to the listings determination, she has not convincingly argued that the evidence compels a more limiting RFC.  Because the Court is not empowered to reweigh the evidence, *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999), it will not disturb the well-supported RFC determination.

Plaintiff also very briefly challenges the ALJ's inclusion of the dishwashing occupation on the list of representative occupations appropriate for Plaintiff's RFC and vocational characteristics.  Plaintiff argues that this occupation requires exposure to dangerous machinery despite the RFC prohibition against "proximity to occupational hazards such as . . . dangerous machinery."  (R. 33).  Remand is sometimes appropriate where there is an "unexplained conflict" between the DOT and a VE's testimony.  *Delestienne v. Saul*, No. CV 20-1349, 2021 WL 5744684, at *1 n.3 (W.D. Pa. Dec. 2, 2021) (citation omitted).  However, in this case remand would be inappropriate even if the ALJ had included the dishwashing occupation in error because the decision would have been the same without it.  *Fisher v. Comm'r of Soc. Sec.*, No. CV 20-1467, 2021 WL 4288313, at *6 (W.D. Pa. Sept. 21, 2021) (citation omitted) (explaining that reviewing courts may affirm an ALJ's decision despite an error when that error "had no effect on the outcome of the case").  Taking away the dishwashing occupation, the ALJ still

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 21) is DENIED and Defendant's Motion for Summary Judgment (Doc. No. 23) is GRANTED as specified above.

s/ Alan N. Bloch  
United States District Judge

ecf:   Counsel of Record

---

identified 178,000 appropriate jobs in the national economy for Plaintiff to justify the non-disability determination. (R. 38). For this and the foregoing reasons, the Court will award summary judgment in Defendant's favor.